# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | |
|---|---|
| AUSTIN MICHAEL STALLARD ) | |
| ) | |
| Petitioner, ) | Case No. 2:15-cv-335 |
| ) | |
| v. ) | District Judge R. Leon Jordan |
| ) | |
| UNITED STATES OF AMERICA ) | Mag. Judge Christopher H. Steger |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION

**I.  Introduction**

Petitioner Austin Michael Stallard ("Petitioner") filed a pro se motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (the "2255 Motion") [Doc. 1].[1] On September 18, 2014, Petitioner—pursuant to a plea agreement—pleaded guilty to conspiracy to distribute and possess with intent to distribute a mixture and substance containing a detectable amount of a-PVP, a Schedule I controlled substance analogue as defined by 21 U.S.C. § 802(32), knowing the substance was intended for human consumption as provided in 21 U.S.C. § 813, in violation of 21 U.S.C. §§ 846 and 841(a)(1).[2] On January 14, 2015, the Court sentenced Petitioner to sixty-one months' imprisonment [Doc. 162 in Case No. 2:14-cr-20, Judgment]. In his 2255 Motion, Petitioner asserts his counsel was ineffective in violation of the Sixth Amendment when counsel incorrectly advised him as to the knowledge requirement for the conspiracy to distribute a Schedule I controlled substance analogue. Petitioner contends that, if he had received the correct information and advice from his attorney, he would not have pleaded guilty. He also asserts he is

---

[1] The underlying criminal case is *United States v. Stallard*, 2:14-cr-20-RLJ-CHS-5.

[2] Petitioner was also charged in Case No. 2:14-cr-71 with separate drug crimes to which he also pleaded guilty. [*See* Doc. 8, Case No. 2:14-cr-71, Plea Agreement.] That case is not implicated by this 2255 Motion.

innocent because he did not have the *mens rea*[3] required to be guilty of conspiracy to distribute a controlled substance analogue.

## II.     Background

### A.     Factual Basis for Petitioner's Guilty Plea

Pursuant to his plea agreement, Petitioner stipulated to the following facts:

- From approximately December 2012 to February 2014, Petitioner conspired with at least one other person to distribute and possess with intent to distribute approximately 1,200 grams of alpha-pyrrolidinopentiophenone ("a-PVP"), a Schedule I controlled substance analogue known as "gravel" [Doc. 95 in Case No. 2:14-cr-20-RLJ-CHS-5, Plea Agreement ¶ 3(a)].

- Petitioner's father was "one of the largest dealers of a-PVP . . . in the Kingsport, Tennessee area," and Petitioner and his cousin David Michael Stallard, sold a-PVP for him [*Id.* ¶ 3(b)]. Other co-defendants accompanied Petitioner's father to obtain a-PVP from an out-of-state supplier; still others stored a-PVP at their residence [*Id.*].

- On April 12, 2013, after Petitioner's father, Johnny Michael Stallard, had been arrested, Johnny Stallard called Petitioner from jail and told him in a recorded conversation to "keep this going for me," and Petitioner replied that he had to keep it going for himself too; they discussed drug dealing, drug debts, and profit [*Id.* ¶ 3(d)].

- In another recorded conversation the next day, Petitioner's father told him to be careful when dealing a-PVP because it would not do any good for them both to be in jail [*Id.*]. Petitioner reassured his father by saying he had "good instincts" [*Id.*].

- In a recorded call on April 18, 2013, Petitioner told his father that he had been robbed of $2,000 worth of a-PVP [*Id.* ¶ 3(e)].

- On May 3, 2013, Petitioner's father promised that, once released on bond, he would take Petitioner to meet their main a-PVP source so Petitioner could deal with him directly but warned that doing so required a lot of responsibility [*Id.*].

- In another recorded jail call on June 23, 2013, Petitioner's father provided the phone number of a drug supplier and told Petitioner to be very careful with it, to call the number, and to identify himself as his father's son [*Id.* ¶ 3(f)]. Petitioner's father warned him that if anyone were to "get[] caught . . . they're going to get 12 years at 100 percent . . . and . . . end up doing about ten and a half of that solid straight through . . . that's if you get caught with a little bit" [*Id.*]. Petitioner's father said it was because of a new law that would make a-PVP a Schedule I narcotic [*Id.*].

---

[3] *Mens rea*: the intention or knowledge of wrongdoing that constitutes part of a crime.

2

- On July 8, 2013, Petitioner led law enforcement officers on a lengthy high-speed chase from Tennessee into Virginia, during which Petitioner tossed various baggies from his vehicle [*Id.* ¶ 3(c)]. Petitioner did not stop until after a front tire on Petitioner's vehicle had exploded [*Id.*]. Officers thereafter searched the vehicle and found approximately one gram of a-PVP, numerous pills (oxycodone, hydromorphone, and diazepam), miscellaneous drug paraphernalia, digital scales, and a stun gun [*Id.*].

- Cell phones recovered from Petitioner and his passenger showed "consistent patterns of drug usage and drug dealing," including text messages from individuals seeking to buy a-PVP and photographs of Petitioner holding drug paraphernalia used to smoke a-PVP [*Id.*].

**B.     Procedural History**

In February 2014, Petitioner and five co-defendants, including Petitioner's father, were charged with conspiracy to distribute and possess with intent to distribute a-PVP, in violation of 21 U.S.C. §§ 846 and 841(a)(1) [Doc. 3 in Case No. 2:14-cr-20-RLJ-CHS-5, Indictment]. Petitioner pleaded guilty to that offense pursuant to the written plea agreement. During the plea hearing in September 2014, Petitioner was specifically advised of his constitutional rights and of the nature and possible consequences of his plea, including the penalties for his offenses; he stipulated to the factual basis set forth in the plea agreement; and the Court questioned Petitioner about his physical and mental condition to ensure that the plea was entered knowing and voluntary [Doc. 11, Tr. of Sept. 18, 2014 Plea Hearing]. The Assistant United States Attorney ("AUSA") advised Petitioner that the elements of conspiracy to which he was pleading were: "an agreement to violate the drug laws, knowledge with intent to join the conspiracy and participation in the conspiracy" [*Id.* at 9]. The AUSA also advised Petitioner that the elements of Count One to which he was pleading guilty were: "defendant knowingly, intentionally and without authority conspired with at least one other person to distribute and possess with the intent to distribute approximately 1,200 grams of APVP, a Schedule I controlled substance analogue. The street name for that substance is Gravel." [*Id.* at 10]. The Court read Petitioner the factual basis for his plea set forth in the Plea Agreement [*Id.* at 10-13]. Petitioner agreed under oath to this factual basis and further stipulated that "he conspired

to distribute and is accountable for a conservative estimate of 1,200 net grams total of APVP" [*Id.* at 15]. The Court asked Petitioner, "Now are you offering to plead guilty because you are, in fact, guilty?" to which Petitioner responded, "Yes, Your Honor" [*Id.* at 16].

On January 14, 2015, the Court sentenced Petitioner to a sixty-one-month term of imprisonment [Doc. 162 in Case No. 2:14-cr-20-RLJ-CHS-5, Judgment]. Petitioner did not file a direct appeal but, on December 17, 2015, filed this timely § 2255 motion [Doc. 222, § 2255 Motion].

### III. Standards of Review

#### A. Threshold Standard

Under 28 U.S.C. § 2255(a), a federal prisoner may make a motion to vacate, set aside, or correct his judgment of conviction and sentence if he claims that the sentence was imposed in violation of the Constitution or laws of the United States; or that the court lacked jurisdiction to impose the sentence; or that the sentence is in excess of the maximum authorized by law, or is otherwise subject to collateral attack. As a threshold standard, to obtain post-conviction relief under Section 2255, a motion must allege: (1) an error of constitutional magnitude; (2) a sentence imposed outside the federal statutory limits; or (3) an error of fact or law so fundamental as to render the entire criminal proceeding invalid. *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003); *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003).

A petitioner bears the burden of demonstrating an error of constitutional magnitude which had a substantial and injurious effect or influence on the criminal proceedings. *Reed v. Farley,* 512 U.S. 339, 353 (1994); *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993). In order to obtain collateral relief under § 2255, a petitioner must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152 (1982).

Rule 4(b) of the Rules Governing Section 2255 Proceedings in the United States District Courts requires a district court to summarily dismiss a Section 2255 motion if "it plainly appears from the face of the motion, the attached exhibits, and the record of the prior proceedings that the movant is not entitled to relief." *See also Pettigrew v. United States*, 480 F.2d 681, 684 (6th Cir. 1973) ("A motion to vacate sentence under § 2255 can be denied for the reason that it states "only bald legal conclusions with no supporting factual allegations.") (quoting *Sanders v. United States*, 373 U.S. 1, 19 (1963)). If the motion is not summarily dismissed under Rule 4(b), Rule 8 requires the court to determine, after a review of the answer and the records of the case, whether an evidentiary hearing is required. If a petitioner presents a factual dispute, then "the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) (quoting *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007)). An evidentiary hearing is not required "if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Valentine*, 488 F.3d at 333 (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)).

### B. Standard for Ineffective Assistance of Counsel

Ineffective assistance of counsel is a recognized constitutional violation that, when adequately shown, warrants relief under § 2255. The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), governs claims of ineffective assistance of counsel raised pursuant to 28 U.S.C. § 2255. *Huff v. United States*, 734 F.3d 600, 606 (6th Cir. 2013). Under this test, to demonstrate a violation of the Sixth Amendment right to effective assistance of counsel, "a defendant must establish that his attorney's performance was deficient and that the deficient performance prejudiced the defense." *Id.* (citing *Strickland*, 466 U.S. at 687).

The first prong of the Strickland test requires a petitioner to show his attorney's performance was deficient by demonstrating that counsel's "representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Stated another way, the petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. The Supreme Court "has declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Huff*, 734 F.3d at 606 (alterations in original) (quoting *Wiggins v. Smith*, 539 U.S. 510, 521 (2003)). A reviewing court must be "highly deferential" to counsel's performance, because

> [a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound . . . strategy."

*Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

Even if a petitioner is successful in overcoming that presumption, he must still satisfy the second prong of the *Strickland* test, *i.e.*, prejudice. Thus, a petitioner must show not only that his counsel's representation was objectively unreasonable, but also that he was prejudiced by counsel's deficiency because there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *McPhearson v. United States*, 675 F.3d 553, 563 (6th Cir. 2012) (quoting *Strickland*, 466 U.S. at 694).

Although the *Strickland* Court emphasized that both prongs must be established in order for the petitioner to meet his burden, it held there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry. *Strickland*, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.*

## IV. Analysis

Petitioner asserts that his counsel was ineffective under Sixth Amendment standards because he was "'misinformed' by counsel that his knowledge that state authorities were 'criminalizing' the distribution of 'bath salts' and 'gravel' was enough to meet or satisfy the knowledge element of 21 U.S.C. § 841" [Doc. 1, 2255 Motion at 5]. Accordingly, the argument continues, he did not knowingly, voluntarily, and intelligently enter his guilty plea. Petitioner asserts that had he been correctly advised as to the *mens rea* element of a Section 841(a)(1) violation with a controlled substances analogue, he would not have pleaded guilty but would have proceeded to trial. He also argues he is innocent because he did not have the requisite *mens rea* to be convicted under 21 U.S.C. § 841(a)(1) for possession with intent to distribute a controlled substances analogue such as a-PVP.

Under 21 U.S.C. § 841(a)(1), it is illegal for a person to "knowingly or intentionally . . . possess with intent to . . . distribute a controlled substance . . ." 21 U.S.C. § 841(a)(1). The Controlled Substance Analogue Enforcement Act of 1986 (Analogue Act) identifies a category of substances substantially similar to those federal controlled substances, *see* 21 U.S.C. § 802(32)(A), and requires that they be treated as controlled substances for purposes of federal law if they are intended for human consumption. 21 U.S.C. § 813; *McFadden v. United States*, 135 S. Ct. 2298,

2302 (2015). In *McFadden*, the Supreme Court addressed the "knowledge necessary for conviction under § 841(a)(1) when the controlled substance at issue is in fact an analogue." *McFadden*, 135 S. Ct. at 2302. The government argued in *McFadden* that the knowledge requirement was met if the defendant knew that he was dealing with a substance that was illegal or regulated under *any* law. *Id.* at 2306. Any law would, of course, include state criminal laws. The Supreme Court rejected this broad interpretation explaining that

> Section 841(a)(1) . . . requires that a defendant knew he was dealing with a "controlled substance." That term includes only those drugs listed on the federal drug schedules or treated as such by operation of the Analogue Act. . . . It is not broad enough to include all substances regulated by any law.

*Id.* The Supreme Court held, instead, that the *mens rea* element can be established in one of two ways.

- First, it can be established by evidence that a defendant knew that the substance with which he was dealing is some controlled substance—that is, one actually listed on the federal drug schedules or treated as such by operation of the Analogue Act—regardless of whether he knew the particular identity of the substance.

- Second, it can be established by evidence that the defendant knew the specific analogue he was dealing with, even if he did not know its legal status as an analogue.

*Id.* at 2305.

The *McFadden* decision was issued five months after Petitioner was sentenced in this case and six months before he filed this 2255 Motion. Petitioner's co-defendant and father, Johnny Michael Stallard, who also pleaded guilty to conspiracy to distribute and possess with intent to distribute a-PVP, filed a 2255 Motion raising the same grounds as does his son in this 2255 Motion. The district court denied Johnny Stallard's 2255 Motion, and the Sixth Circuit Court of Appeals affirmed the district court's decision in an opinion which serves as persuasive authority for the

Court's decision in this case. *See Stallard v. United States*, No. 17-6188, 2018 WL 1442984 (6th Cir. Mar. 15, 2018).

The factual basis for Petitioner's plea agreement belies Petitioner's assertion that he did not have the requisite *mens rea* to be convicted under Section 841(a)(1). In the factual basis, Petitioner admitted that he and his father discussed selling a-PVP and that Petitioner's father told him to be careful with a-PVP because it would not do any good for them both to be in jail. Petitioner also told his father he had been robbed of a quantity of a-PVP valued at $2,000. His father promised to introduce Petitioner to his supplier for a-PVP after his (father's) release. In these conversations, Petitioner referred to the identity of the drug he was distributing, making it clear that Petitioner knew the specific analogue he was dealing with, even if he did not know its legal status as an analogue for a federally controlled substance.

At the plea hearing, the Court read aloud the factual basis for Petitioner's guilty plea. Petitioner agreed under oath to this factual basis and further stipulated that "he conspired to distribute and is accountable for a conservative estimate of 1,200 net grams total of APVP" [*Id.* at 15]. The Court asked Petitioner, "Now are you offering to plead guilty because you are, in fact, guilty?" to which Petitioner responded, "Yes, Your Honor" [*Id.* at 16].

In *Blackledge v. Allison,* the Supreme Court explained the importance and weight of representations made during the plea hearing, stating:

> [t]he representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Blackledge*, 431 U.S. 63, 73-74 (1977). Absent clear and convincing evidence to the contrary, a defendant is bound by his or her plea agreement and representations made under oath during a plea

colloquy. *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986) ("where the court has scrupulously followed the required procedure, the defendant is bound by his statements in response to that court's inquiry") (internal punctuation and citations omitted); *see also United States v. Brenner*, 726 F. App'x 433, 438 (6th Cir. 2018) (same).

Petitioner's sworn testimony at the plea hearing attesting to the accuracy of the factual basis in the plea agreement gives rise to a strong presumption of verity. Petitioner has come forward with no basis for this Court to conclude otherwise. As previously discussed, the factual basis is evidence that Petitioner knew the identity of the specific analogue he was distributing, and such knowledge is sufficient to satisfy the *mens rea* requirement for distribution of an analogue in violation of Section 841(a)(1) and the Analogue Act. *McFadden,* 135 S. Ct. at 2305; *Stallard*, 2018 WL 1442984, at *2. As the Sixth Circuit found in *Stallard*, 2018 WL 1442984, at *2, this Court also concludes "[j]urists of reason therefore could not debate . . . that counsel did not misinform Stallard with respect to the knowledge element of the crime to which he pleaded guilty."[4] Nor could a reasonable jurist debate that Petitioner is actually guilty since he voluntarily and knowingly admitted at his plea hearing that he knowingly distributed and possessed with intent to distribute a-PVP, the specific identity of which he was fully aware. *See id.* at *3. On the basis of the record before it, the Court finds there is no merit to Petitioner's 2255 Motion.

---

[4] *See also Stallard*, 2018 WL 1442984, at *2 n. 1 wherein the Sixth Circuit stated,

> As noted above, [Johnny] Stallard claims that his counsel was wrong to tell him that his knowledge that the distribution of bath salts and gravel was illegal under *state* law was sufficient to meet the knowledge requirement. This claim is technically true on its face insofar as it does not comport with the definition of knowledge set forth in *McFadden*. However, so long as Stallard knew that the substance that he was dealing was gravel—which, as set forth above, he did—he satisfied the knowledge requirement regardless of whether he knew that dealing gravel was illegal under state law. His ineffective-assistance claim therefore does not deserve encouragement to proceed further.

## V. Conclusion

For the reasons stated herein, the Court finds no evidentiary hearing for this 2255 Motion is necessary, and the Court concludes on the basis of the record before it that Petitioner is not entitled to relief. His 2255 Motion is therefore **DENIED**.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge